2026 IL App (1st) 251020-U

SIXTH DIVISION
August 14, 2026

No. 1-25-1020

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LSC001, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LSC002, LLC, LSC003, LLC, and LSC004, LLC, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 24L10925 |
| | ) | |
| LIFEROC CAPITAL, LLC and LRC FAMILY | ) | Honorable |
| PARTNERSHIP, | ) | Daniel J. Kubasiak, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Pucinski and Gamrath concurred in the judgment.

**ORDER**

¶ 1  ***Held:***  The circuit court's dismissal of the plaintiffs' statutory claims under section 2-619 is reversed and remanded where the court enforced the purchase agreements' exclusive-remedy and waiver provisions without addressing Illinois precedent on whether such provisions may bar claims alleging intentional fraud or deceptive conduct.

¶ 2  Plaintiffs-appellants LSC002, LLC, LSC003, LLC, and LSC004, LLC appeal from an order of the circuit court of Cook County dismissing with prejudice Counts III through VIII of their amended complaint against defendants-appellees LifeRoc Capital, LLC and LRC Family Partnership. Those counts alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq. (West 2024) and the Illinois Viatical Settlements Act (215 ILCS 159/1 et seq. (West 2024) arising from plaintiffs' purchases of three life insurance policies from defendants. Plaintiffs argue the circuit court erred in enforcing the parties' purchase agreements to bar the LSC entities' statutory claims and concluding the Consumer Fraud Act did not apply to the transactions. For the following reasons, we reverse and remand for further proceedings.

¶ 3                          BACKGROUND

¶ 4  Plaintiffs LSC001, LLC, LSC002, LLC, LSC003, LLC and LSC004, LLC are Illinois limited liability companies. Defendants LifeRoc Capital, LLC and LRC Family Partnership are Delaware limited liability companies with their principal place of business in Los Angeles, California. A viatical settlement involves a transaction in which the owner of a life insurance policy, known as a viator, transfers an interest in the policy or its death benefits to a viatical settlement provider in exchange for compensation that is less than the expected death benefit. See 215 ILCS 159/5 (West 2024). LifeRoc is alleged to be in the viatical-settlement business, purchasing life insurance policies from their original owners and reselling those policies to investors for profit.

¶ 5     In the amended complaint, plaintiffs alleged the value of a viaticated life insurance policy depends in substantial part on the insured's projected life expectancy because the policy owner must continue paying premiums until the insured dies. Plaintiffs alleged that, when acquiring the policies, LifeRoc relied on reports from life-expectancy providers accepted within the industry that indicated the policies had little or negative present value. Plaintiffs further alleged that LifeRoc later obtained reports reflecting materially shorter life expectancies, marketed the policies to downstream investors using those reports, and concealed the contrary reports in its possession.

¶ 6     On February 1, 2021, LSC002 and LifeRoc Capital entered into a Life Insurance Policy Direct Sale and Purchase Agreement under which LifeRoc Capital agreed to sell, and LSC002 agreed to purchase, policy number A70504481L, referred to as the Gilbert policy, for $675,000. Plaintiffs alleged that LifeRoc provided LSC002 with a Focus life-expectancy report estimating the insured's life expectancy at 59 months and the policy's fair market value at $957,499. Plaintiffs further alleged that a traditional life-expectancy report reflected a 191-month life expectancy and a fair market value of $48,951, and that LifeRoc concealed the existence or substance of traditional life-expectancy information in its possession.

¶ 7     On June 28, 2021, LSC003 and LifeRoc Capital entered into a Life Insurance Policy Direct Sale and Purchase Agreement under which LifeRoc Capital agreed to sell, and LSC003 agreed to purchase, policy number V2675379, referred to as the Field policy, for $550,000. Plaintiffs alleged that LifeRoc provided LSC003 with Convergence and Clarity life-expectancy reports estimating the insured's life expectancy at 88 months and 70 months, respectively, and policy values of $1,200,142 and $1,655,334. Plaintiffs further alleged the traditional life-expectancy reports reflected life expectancies between 151 and 181 months and fair market values ranging from negative $275,500 to $79,581.

¶ 8    On September 3, 2021, LSC004 and LRC Family Partnership ("LRC") entered into a Life Insurance Policy Direct Sale and Purchase Agreement under which LRC agreed to sell, and LSC004 agreed to purchase, policy number 46180486, referred to as the Royston policy, for $425,000. Plaintiffs alleged LRC provided LSC004 with a Focus life-expectancy report estimating the insured's life expectancy at 77 months and the policy's fair market value at $1,086,793. Plaintiffs further alleged a traditional life-expectancy report reflected a 200-month life expectancy and a fair market value of negative $362,559.

¶ 9    Each of the three transactions was governed by a written purchase agreement. The agreements for the Gilbert, Field, and Royston transactions are attached to the amended complaint as Exhibits 2, 3, and 4. For purposes of this appeal, the parties agree the three agreements are materially similar.

¶ 10   In the agreements, the purchasing LSC entities made several representations concerning their sophistication and the basis for their investment decisions. Among other things, the purchasing entities represented that they were sophisticated parties, the agreements were the product of arm's-length negotiations, and that they were making an independent decision to purchase the policies after conducting their own investigation and consulting their own advisors.

¶ 11   The agreements also addressed life expectancy information. Section 4.03 provided that LifeRoc made no representation or warranty concerning the accuracy or completeness of information provided in connection with the negotiation of the agreements or the purchase of the policies. That section further stated LifeRoc was under no obligation to provide life expectancy information, that any life expectancy quotes or reports provided were for informational purposes only, and reference to any such report was not an endorsement of the report's preparer or a representation or warranty concerning the accuracy of the report's life expectancy estimate.

¶ 12   Article V of the agreements contained indemnification and remedy provisions. Section 5.05, titled "Exclusive Remedy," provided that, other than specific performance, the indemnification provisions were the parties' sole and exclusive remedy for "any and all claims" against the other party for losses or damages "with respect hereto, and the transactions contemplated hereby," including claims of fraud and negligence. Section 5.05 further provided that each party irrevocably waived any and all rights to make claims against the other party, including claims "under statute, common law, tort or equity," as a result of losses or damages incurred with respect to the transactions. The agreements also shortened applicable claim periods to the survival period set forth in section 5.01 and contained New York choice-of-law provisions.

¶ 13   Plaintiffs filed an amended complaint asserting statutory claims under the Illinois Viatical Settlements Act of 2009 and the Illinois Consumer Fraud and Deceptive Business Practices Act. Counts III, V, and VII alleged that LifeRoc violated the Viatical Settlements Act in connection with the Gilbert, Field, and Royston transactions by presenting false material information, concealing material information, and employing a plan, device, scheme, or artifice to defraud. Counts IV, VI, and VIII alleged that LifeRoc violated the Consumer Fraud Act in connection with those same transactions by engaging in unfair or deceptive acts or practices, including misrepresentations, omissions, concealment, or failure to disclose material facts.

¶ 14   LifeRoc moved to dismiss Counts III through VIII under sections 2-615 and 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-615, 2-619 (West 2024). LifeRoc argued, among other things, the purchase agreements barred the claims because plaintiffs had waived claims arising from the transactions, agreed that indemnification was the exclusive remedy, represented that each purchasing entity was relying on its own investigation and advisors, and agreed that LifeRoc had no obligation to provide life-expectancy information. LifeRoc also argued the claims were barred

by the agreements' contractual limitation period and New York choice-of-law provisions, and plaintiffs could not state claims under the Consumer Fraud Act or the Viatical Settlements Act.

¶ 15   Plaintiffs responded, arguing the agreement provisions did not bar the LSC entities' statutory claims and, in any event, could not be enforced to exculpate intentional misconduct. Plaintiffs also argued the Consumer Fraud Act's anti-waiver provision rendered any purported waiver unenforceable, that Illinois law applied notwithstanding the agreements' choice-of-law provisions, and the Viatical Settlements Act applied to the transactions.

¶ 16   The circuit court granted LifeRoc's motion to dismiss Counts III through VIII with prejudice on April 17, 2025. The court found that section 5.05 of the purchase agreements was clear and unambiguous and operated as an exclusive-remedy provision for disputes between the parties. The court further found that plaintiffs had failed to provide a basis showing that any purchasing entity was forced to accept the provision, noting that each entity was represented by counsel. The court also concluded the Consumer Fraud Act did not apply because the transactions were private agreements between corporate entities and were not the type of transactions intended to be covered by the Act. Although plaintiffs had argued that Illinois public policy prohibited enforcement of the provisions against claims alleging intentional misconduct, the court did not discuss the Illinois authorities governing that issue or analyze how those authorities applied to plaintiffs' allegations. The court also did not address LifeRoc's additional grounds for dismissal of the Viatical Settlements Act claims.

¶ 17   On May 14, 2025, the circuit court entered a written order under Illinois Supreme Court Rule 304(a) that there was no just reason to delay enforcement or appeal of the order dismissing Counts III through VIII. Plaintiffs filed their notice of appeal on May 29, 2025. This appeal followed.

¶ 18                                        JURISDICTION

¶ 19    The circuit court dismissed Counts III through VIII of plaintiffs' amended complaint with prejudice on April 17, 2025. Those counts constituted all claims asserted by LSC002, LSC003, and LSC004, but Counts I and II, brought by LSC001, remained pending. Accordingly, the April 17 order was final as to LSC002, LSC003, and LSC004, but was not immediately appealable without a finding under Illinois Supreme Court Rule 304(a).

¶ 20    On May 14, 2025, the circuit court entered a written order finding there was no just reason to delay enforcement or appeal of the April 17 order dismissing Counts III through VIII. Plaintiffs timely filed a notice of appeal on May 29, 2025. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 303 and 304(a). Ill. S. Ct. Rs. 303, 304(a) (eff. July 1, 2017; Mar. 8, 2016).

¶ 21                                         ANALYSIS

¶ 22    We review an order granting a motion to dismiss under section 2-619 of the Code of Civil Procedure *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative matter that defeats the claim. *Id*. In reviewing the dismissal, we accept all well-pleaded facts and all reasonable inferences arising from those facts as true and construe them in the light most favorable to the plaintiff. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008).

¶ 23    Plaintiffs contend the circuit court erred in enforcing section 5.05 of the purchase agreements to dismiss the LSC entities' statutory claims because an exculpatory provision may not shield a party from liability for intentional fraud or willful misconduct. Defendants respond the agreements were negotiated by sophisticated commercial entities and expressly allocated the

7

risks associated with life-expectancy information through representations, disclaimers, exclusive-remedy provisions, shortened claim periods, and a New York choice-of-law provision.

¶ 24 Illinois generally recognizes the freedom of parties to contract and enforces clear and unambiguous contractual language as written. *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 449 (2011). But that freedom is not absolute. A contractual provision that contravenes Illinois public policy will not be enforced. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 64-65 (2006). Whether an agreement violates public policy depends upon the particular facts and circumstances of the case. *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 28.

¶ 25 In *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 164-65 (1986), this court held that an exculpatory clause could not protect a party from the consequences of willful and wanton misconduct or shield a defendant from liability for fraud. This court recognized that *Zimmerman* is consistent with a long line of decisions holding that exculpatory provisions protecting a party from liability for willful and wanton conduct are void as against public policy. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 285 Ill. App. 3d 201, 216 (1996). See also *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 183 (2004); *Davis v. Commonwealth Edison Co.*, 61 Ill. 2d 494, 500-01 (1975); *Falkner v. Hinckley Parachute Center, Inc.*, 178 Ill. App. 3d 597, 604 (1989); *Third Swansea Properties, Inc. v. Ockerlund Construction Co.*, 41 Ill. App. 3d 894, 897 (1976).

¶ 26 Illinois courts also strictly construe exculpatory clauses against the party seeking its enforcement. *Garrison v. Combined Fitness Centre, Ltd.*, 201 Ill. App. 3d 581, 585 (1990). Such provisions must clearly, explicitly, and unequivocally identify the conduct from which liability is released and will not be construed to defeat a claim that is not expressly covered by its terms. *Tyler*

*Enterprises of Elwood, Inc. v. Skiver*, 260 Ill. App. 3d 742, 750 (1994); *Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716, ¶ 19.

¶ 27    Here, plaintiffs do not merely allege that life-expectancy estimates supplied by defendants ultimately proved inaccurate. Plaintiffs allege that defendants relied upon life-expectancy reports accepted within the industry when purchasing the policies and that those reports indicated the policies had little or negative present value. Plaintiffs further allege that defendants subsequently obtained reports reflecting materially shorter life expectancies, marketed the policies to plaintiffs using those reports, and concealed the contrary reports already in defendants' possession. At the section 2-619 stage, we must accept those well-pleaded allegations and the reasonable inferences arising from them as true. *Porter*, 227 Ill. 2d at 352.

¶ 28    Defendants' arguments concerning the parties' sophistication, representation by counsel, and contractual allocation of investment risk are relevant to the enforceability of the agreements. Section 5.05 is also broad. It identifies fraud and negligence, purports to make indemnification the parties' exclusive remedy, and waives claims arising under statute, common law, tort, or equity. But those considerations do not resolve whether Illinois public policy permits enforcement of the provision against the intentional deceptive conduct alleged in the amended complaint.

¶ 29    This distinction is significant. If plaintiffs' claims concerned only the accuracy of competing projections, the agreements' risk-allocation and disclaimer provisions may control. But the amended complaint alleges that defendants knowingly marketed policies as valuable investment opportunities while concealing information indicating the policies had little or negative economic value. The Consumer Fraud Act prohibits deception, fraud, false pretenses, misrepresentations, and the concealment or omission of material facts in the conduct of trade or commerce. 815 ILCS 505/2 (West 2024). The Viatical Settlements Act defines viatical-settlement fraud to include

knowingly presenting false material information or concealing material information concerning the solicitation, offer, effectuation, or sale of a viatical-settlement contract or insurance policy, and employing a plan, financial structure, device, scheme, or artifice to defraud related to viaticated policies. 215 ILCS 159/72(d)(1)(A)(vii), (B) (West 2024).

¶ 30    The circuit court found section 5.05 was clear and unambiguous and emphasized plaintiffs were sophisticated entities represented by counsel. But the court did not discuss *Zimmerman*, *Kleinwort*, or related authorities governing whether public policy permits enforcement of an exculpatory or exclusive-remedy provision against claims alleging intentional fraud or willful misconduct. Nor did the court analyze the effect of section 10c of the Consumer Fraud Act, which provides that, "[a]ny waiver or modification of the rights, provisions, or remedies" created by the Act is void and unenforceable. 815 ILCS 505/10c (West 2024). Thus, section 5.05's broad language, by itself, did not resolve the issue.

¶ 31    The New York choice-of-law provision does not eliminate the need for public-policy analysis. Illinois generally enforces contractual choice-of-law provisions, but a chosen law will not be applied where its application would be contrary to a fundamental policy of a state that has a materially greater interest in the determination of the issue and whose law would otherwise apply. *Old Republic Insurance Co. v. Ace Property & Casualty Insurance Co.*, 389 Ill. App. 3d 356, 363 (2009); *Dancor Construction, Inc. v. FXR Construction, Inc.*, 2016 IL App (2d) 150839, ¶ 73. Here, plaintiffs are Illinois entities asserting rights under Illinois statutes and alleging intentional deceptive conduct in connection with the transactions. Accordingly, before treating the New York choice-of-law provision as dispositive, the circuit court must consider whether Illinois has a materially greater interest in the dispute and whether applying New York law would conflict with

10

a fundamental policy reflected in the Consumer Fraud Act or the Viatical Settlements Act. We express no opinion on the ultimate enforceability of the choice-of-law provision.

¶ 32     The circuit court also concluded the Consumer Fraud Act did not apply because the transactions were private agreements between corporate entities. But corporate status alone does not resolve the Act's applicability. The Consumer Fraud Act is intended to "protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002). When a dispute involves businesses that are not consumers of each other's products, the relevant issue is whether the alleged conduct involves trade practices directed to the market generally or otherwise implicates consumer-protection concerns. *Lake County Grading Co. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 459 (1995). Because the circuit court's conclusion was not accompanied by the necessary analysis, on remand, the court must conduct an analysis of the applicability of the Illinois Consumer Fraud Act.

¶ 33     To be clear, we do not hold that section 5.05 is ultimately unenforceable, plaintiffs have established violations of either statute, or the circuit court may not ultimately reach the same disposition after conducting the required analysis. We hold only that, accepting plaintiffs' well-pleaded allegations as true, the dismissal cannot stand without consideration of the Illinois public-policy authorities governing the enforcement of contractual exculpatory and exclusive-remedy provisions against claims alleging intentional fraudulent or deceptive conduct.

¶ 34     Accordingly, we reverse the dismissal of Counts III through VIII and remand for further consideration of relevant Illinois authority.

¶ 35                                        CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded.

¶ 37    Reversed and remanded.